[Cite as *Hinkston v. Dept. of Rehab. & Corr.*, 2010-Ohio-3223.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MARK HINKSTON

     Plaintiff

     v.

DEPARTMENT OF REHABILITATION AND CORRECTION

     Defendant
     Case No. 2008-09490

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

## MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging "harassment" and negligent training and supervision.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} At all times relevant to this action, plaintiff was an inmate in the custody and control of defendant at the Southern Ohio Correctional Facility (SOCF) pursuant to R.C. 5120.16. Plaintiff asserts that between April 2007 and April 2008, corrections officers (COs) assigned to "recreation" at SOCF continually "harassed" and threatened him.

{¶ 3} Plaintiff testified that the primary antagonist in this alleged campaign of harassment was CO Brian Felts. According to plaintiff, Felts went out of his way to be around plaintiff so that he could verbally threaten him. Specifically, plaintiff testified that on April 25, 2007, Felts told him that he was waiting for plaintiff to return from "rec" so

---

[1]Plaintiff's claims that he was denied "recreation" on multiple occasions were dismissed by the court on January 14, 2009.

that he could "knock my teeth out and skull-fuck me"; that on May 9, 2007, he witnessed Felts assault another inmate and that Felts turned to plaintiff and said "you'll be next"; that on June 26, 2007, Felts again harassed him in an unspecified manner; that on October 4, 2007, Felts came to the water fountain across from the recreation pod which plaintiff was occupying and told plaintiff that he was going to "get him"; that also on October 4, 2007, Felts made fun of him being a Muslim by saying that "Allah wants a porkchop"; that on October 12, 2007, Felts told him that he can "get anybody"; and that on March 12, 2008, Felts threatened to spray him with chemical mace if he attempted to go to recreation.

{¶ 4} Plaintiff further testified about the following incidents involving other COs assigned to recreation duty: that on June 7, 2007, several unidentified COs falsely told other inmates that he was a "snitch"; that on July 2, 2007, CO Davis wrote a conduct report wherein she falsely accused him of masturbating; that on September 25, 2007, he witnessed Davis "going through" and "messing with" his mail; that on September 27, 2007, CO Setty would not permit a nurse to come to his cell to deliver his medication and instead told him to go and get his medication; that on October 1, 2007, CO Gladman escorted plaintiff into an area of the housing unit while another inmate was out of his cell and told plaintiff that he wanted the two inmates to get into a fight; that on January 16, 2008, CO Lewis escorted him to the recreation area and threatened to "get him"; and that on April 7, 2008, CO Barney harassed him and denied him the opportunity to go to recreation because plaintiff's hair was only partially braided.

{¶ 5} Plaintiff documented the above incidents in numerous kites, informal complaints, and grievances that he filed with SOCF staff. (Plaintiff's Exhibits 1, 3-28.) The responses by SOCF investigatory staff show that no evidence was ever found to substantiate plaintiff's claims and that no staff member was ever disciplined for harassing plaintiff or found guilty of any wrongdoing. (Defendant's Exhibits A-D, F-K, M-

P.)  According to plaintiff, such findings and responses are evidence of an institution-wide conspiracy to harass him and cause him emotional distress.

{¶ 6}  The court construes plaintiff's claims that defendant's employees "harassed" and threatened him as claims for intentional infliction of emotional distress. In order to sustain such a claim, plaintiff must show that:  "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious."  *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82; citing *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34.

{¶ 7}  To constitute conduct sufficient to give rise to a claim of intentional infliction of emotional distress, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Yeager v. Local Union 20, Teamsters* (1983), 6 Ohio St.3d 369, 375, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment d.

{¶ 8}  "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  * * *  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim,  'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Id. at 374-375.

{¶ 9}  The court finds that plaintiff's allegations of outrageous conduct by the recreation COs are not credible.  Plaintiff has failed to prove by a preponderance of the evidence that Felts or any other employee of defendant exhibited conduct that could be reasonably characterized as extreme and outrageous as is necessary to support a claim

for intentional infliction of emotional distress. Accordingly, plaintiff cannot prevail on his claim of "harassment."

{¶ 10} In order for plaintiff to prevail on a claim for negligent hiring and supervision, he must prove: 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of such incompetence; 4) the employee's act or omission causing plaintiff's injuries and 5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724.

{¶ 11} Inasmuch as the court finds that plaintiff has failed to prove any "incompetence" on the part of defendant's employees, he has failed to meet the elements of his negligent hiring and supervision claim.

{¶ 12} Based upon the foregoing, the court finds that plaintiff did not establish any of his claims by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Douglas R. Folkert
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Mark Hinkston, #545-518
878 Coitsville-Hubbard Road
Youngstown, Ohio 44505

MR/cmd
Filed June 10, 2010
To S.C. reporter July 7, 2010